UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMED YOUSSEF HAMMAD,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:17-cv-1380-KJN<br><br><br><br>ORDER |

Plaintiff Mohamed Hammad seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") that plaintiff was not disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] Plaintiff filed a motion for summary judgment, which the Commissioner opposed by filing a cross-motion for summary judgment. (ECF Nos. 14, 15.) Thereafter, plaintiff also filed a reply brief. (ECF No. 17.) For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 8, 9.)

1

I.   BACKGROUND

Plaintiff was born on October 17, 1970; has a doctoral degree in electrical engineering; can communicate in English; and previously worked as an electronics engineer. (Administrative Transcript ("AT") 29-30, 41-42, 184, 206, 208-09.)[2] On June 30, 2014, plaintiff filed an application for DIB, alleging that he was unable to work as of September 1, 2013, due to paranoid schizophrenia, post-traumatic stress disorder ("PTSD") or "shell-shock," depression, anxiety, obsessive compulsive disorder ("OCD"), hypogonadism (testicular failure), premature aging, lethargy, low IQ, agoraphobia, claustrophobia, and inability to interact with others. (AT 95, 184, 207.) After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on June 2, 2016, and at which plaintiff, appearing with counsel, and a vocational expert ("VE") testified. (AT 20, 36-81.) The ALJ subsequently issued a decision dated September 8, 2016, determining that plaintiff had not been disabled, as defined in the Act, from September 1, 2013, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 20-30.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 28, 2017. (AT 1-4.) Plaintiff subsequently filed this action on June 30, 2017, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ erroneously discounted the opinion of plaintiff's treating physician; (2) whether the ALJ improperly discounted plaintiff's credibility; and (3) whether the ALJ failed to properly consider plaintiff's alleged medication side effects.

////

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III. **LEGAL STANDARD**

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. **DISCUSSION**

### Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff met the insured

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the

status requirements of the Act for purposes of DIB through December 31, 2018. (AT 22.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since September 1, 2013, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: anxiety disorder, depression, and a personality disorder. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 24.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: no public contact; he can occasionally interact with supervisors and coworkers; and he must avoid visual tasks that require fast reflexes.

(AT 25.) At step four, the ALJ determined, based on the VE's testimony, that plaintiff was capable of performing past relevant work as an electronics engineer. (AT 29-30.)[4] Consequently, the ALJ concluded that plaintiff had not been disabled, as defined in the Act, from September 1, 2013, plaintiff's alleged disability onset date, through September 8, 2016, the date of the ALJ's decision. (AT 30.)

////
////
////

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[4] In light of the ALJ's determination at step four, the ALJ did not proceed to step five.

<u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*Whether the ALJ erroneously discounted the opinion of plaintiff's treating physician*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. <u>Holohan</u>, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. <u>Id.</u> at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, <u>Edlund</u>, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. <u>Lester</u>, 81 F.3d at 831.

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

In this case, plaintiff's treating psychiatrist, Dr. Mandeep Behniwal, submitted two mental medical source statements on February 12, 2015, and June 7, 2016, respectively, assessing various serious mental limitations and essentially opining that plaintiff was unable to complete a normal workday and workweek due to his impairments of major depressive disorder, schizoaffective disorder, and posttraumatic stress disorder. (AT 474-79, 669-74.) Because Dr. Behniwal's opinion was contradicted by other opinions in the record, including those of the state agency physicians, the ALJ was required to provide specific and legitimate reasons to discount Dr. Behniwal's opinion. As discussed below, the court concludes that the ALJ properly discharged that obligation.

The ALJ reasonably found that Dr. Behniwal's assessments were overly restrictive and inconsistent with his own treatment notes and the treatment notes of plaintiff's other psychiatric providers during the relevant period. (AT 29.) Although examinations periodically revealed loud speech, depressed mood, and a flat or slightly anxious affect, the clinical findings were otherwise largely unremarkable, and plaintiff was often noted to be stable and doing well on his medications. (AT 27-29, see, e.g., AT 339-40, 342, 377-79, 551-604.) Curiously, Dr. Behniwal fairly consistently assessed plaintiff with a Global Assessment of Functioning ("GAF") score of 61-70. GAF is a scale reflecting "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id.[6]

---

[6] In his reply brief, plaintiff contends that the ALJ improperly relied on such GAF scores contrary to the Commissioner's guidance on GAF scores. That argument is devoid of merit. This is not a case where an ALJ relied solely on a single GAF score by some other medical source to discount an otherwise well-supported treating physician opinion. Instead, while specifically acknowledging the somewhat limited evidentiary value of GAF scores in general, the ALJ noted that the GAF scores in this case were "consistent with the mild and stable psychiatric symptoms documented in the record." (AT 28.) Moreover, the GAF scores here were assessed by the very treating physician whose opinion the ALJ was evaluating. Thus, it was plainly proper for the ALJ to consider the glaring inconsistency between Dr. Behniwal's source statements and the GAF

6

The ALJ also rationally rejected Dr. Behniwal's statement that plaintiff had a low IQ or reduced intellectual functioning as unsupported by the record, because plaintiff had a doctoral degree in electrical engineering and worked in that capacity for many years. (AT 29.) Although plaintiff urges an alternative interpretation of Dr. Behniwal's statement, i.e., that plaintiff's other psychiatric symptoms somehow reduced plaintiff's IQ or intellectual functioning, Dr. Behniwal did not actually state as much, and the ALJ's observation as to an apparent inconsistency is undoubtedly rational.

Finally, the court finds without merit plaintiff's contention that the ALJ failed to appropriately consider the factors outlined in 20 C.F.R. § 404.1527, especially the length and extent of plaintiff's treatment relationship with Dr. Behniwal. In this case, the ALJ clearly reviewed and discussed Dr. Behniwal's treatment records, which documented an extensive treatment relationship. Nevertheless, a lengthy or extensive treatment relationship by itself is not dispositive, and ultimately cannot overcome the problem of an opinion that is unsupported and inconsistent with the weight of the treatment records.

Consequently, the ALJ's evaluation of Dr. Behniwal's opinion was supported by the record and by the proper analysis.

*Whether the ALJ improperly discounted plaintiff's credibility*

In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence

---

scores assessed in Dr. Behniwal's treatment notes.

> of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

In this case, the ALJ did not entirely reject plaintiff's testimony, but in fact assessed significant social functional limitations based on plaintiff's testimony that he tended to isolate himself. (AT 29.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony concerning the degree of his symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

First, the ALJ reasonably found that plaintiff's allegations of disabling symptoms and functional limitations were inconsistent with the weight of the medical evidence and treatment records, as discussed above. (AT 26-29.) Indeed, the records generally show that plaintiff's mental impairments were well controlled with medication. A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

////

Second, the ALJ permissibly noted that plaintiff received largely routine and conservative care, including medication management visits and sporadic telephonic counseling with a therapist in Arizona. (AT 26, 29.) See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"). Although plaintiff now posits on appeal that the conservative treatment he received could have been due to a lack of financial resources, there is no evidence of that assertion in the record. Indeed, plaintiff received both physical and mental health care during the relevant period from various specialists. Moreover, there is no indication that plaintiff's psychiatrist recommended more intensive treatment, but that it was somehow denied due to insurance coverage or other financial reasons.

Third, the ALJ rationally concluded that plaintiff's work history undermined his allegations of disability. (AT 29.) As the ALJ explained, plaintiff's treatment records document a long history of mental health problems, including depression and symptoms of posttraumatic stress disorder, but plaintiff nonetheless worked in "a highly skilled profession for many years despite his symptoms." (AT 27, 29.) Even though Dr. Behniwal claimed that plaintiff's condition had deteriorated over time (AT 673), there is little, if any, evidence of such deterioration in the treatment records. As such, the court cannot say that the inference the ALJ drew from plaintiff's work history was improper.

Finally, the ALJ appropriately found that plaintiff's activities, including driving, going out alone, shopping, preparing simple meals, and handling his financial affairs, suggested a greater functional capacity than plaintiff alleged. (AT 24-26.) "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting...Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted). To be sure, the record also contains some contrary evidence, suggesting that plaintiff's activities are more limited. However, it is the function of the ALJ to resolve any ambiguities, and

the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

*Whether the ALJ failed to properly consider plaintiff's alleged medication side effects*

In his reply brief, plaintiff concedes that the ALJ had considered some of the side effects of plaintiff's medications, but argues that the decision focused solely on fatigue and lethargy, and ignored plaintiff's testimony regarding heart palpitations. However, the record contains no medical source opinion of specific functional limitations attributable to plaintiff's alleged heart palpitations. Therefore, any failure by the ALJ to explicitly discuss it was plainly harmless error. See Molina, 674 F.3d at 1111 ("we may not reverse an ALJ's decision on account of an error that is harmless").

V. CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is GRANTED.

////

3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

Dated:  September 26, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE